STATE ex rel. H. H. BARNHILL v. Z. G. THOMPSON.

(Decided April 5, 1898).

*Action of Quo Warranto—Public Officer—County Com-*
*missioner—County Board of Education—Forfeiture*
*of Office by Accepting Another.*

1. The County Board of Education it a public office.

2. A citizen and tax payer of a County is entitled to bring an action in
   the nature of *quo warranto* to try the right of a person to hold two
   offices in such County at the same time.

3. Under Section 7, Art XIV of the Constitution, one person cannot hold
   the office of County Commissioner and also be a member of the
   County Board of Education.

4. The question of holding two public offices at the same time does not
   depend, as at common law, upon the incompatibility of the two
   offices alone but upon the positive language of the Constitution
   forbidding it.

5. The acceptance of a second office by one already holding a public
   office operates *ipso facto* to vacate the first. While the officer has a
   right to elect which of the two he will retain, his election is
   deemed to be made when he accepts and qualifies for the second.

CIVIL ACTION in the nature of *quo warranto* to try the
title of the defendant to the office of County Commis-
sioner, heard before *Allen, J.*, at Spring Term, 1898, of
BLADEN Superior Court.   His Honor, by consent, found
the facts as set out in the opinion and rendered a judg-
ment as follows:

"This cause coming on for trial and a jury trial being
waived, after finding the facts, and the Court being of
the opinion that the duties of a member of the Board of
Education are not incompatible with the duties of a
member of the Board of County Commissioners, and
that the defendant did not forfeit his office of County
Commissioner by subsequently accepting and qualifying

as a member of the Board of Education of Bladen County, it is therefore adjudged that the defendant go without day and recover his costs of the relator, to be taxed by the Clerk." From this judgment the plaintiff appealed.

*Mr. R. S. White* for plaintiff (appellant).
*Messrs. Jones & Boykin* for defendants.

FAIRCLOTH, C. J.: The facts in this case were found by his Honor, by consent, and are as follows: "The defendant was duly elected a county commissioner for Bladen County at the general election held in 1896 and duly qualified as such on the 1st Monday in December, 1896, and has since continued to hold the office, and now holds and exercises the duties thereof. On the 1st Monday of June, 1897, the defendant was elected by the duly constituted election board a member of the Board of Education for Bladen County and qualified as such member by entering upon the discharge of the duties thereof and still continues to exercise the same. An action was brought to Fall Term, 1897, of Bladen Superior Court by the Attorney General on the relation of one L. P. Cromartie against the defendant and others, to turn said defendant out of the office of county commissioner. The Superior Court sustained the defendant's demurrer and gave judgment dismissing the action, and the relator appealed to the Supreme Court, and at September Term, 1897 thereof the said judgment was affirmed (*Cromartie* v. *Parker*, 121 N. C., 198) and the opinion of the court certified to this court (Superior Court) at its present sitting, and judgment in accordance with the opinion of the Supreme Court was rendered at this Term. The present action was brought on the 23rd

of February, 1898, before the final judgment was rendered in said former action in accordance with the opinion of the Supreme court. Leave was granted by the Attorney General to bring this action on the 24th February, 1898."

.It is also admittled that the plaintiff is a citizen, property owner and tax payer of Bladen county, and that in June, 1897, the defendant Thompson and C. W. Lyon and John F. Croom proceeded to elect themselves members of the Board of Education for the county. The plaintiff institutes this action in the nature of *quo warranto*, which he may do (*Hines* v. *Vann*, 118 N. C., 3; *Foard* v. *Hall*, 111 N. C., 369; *Code*, Section 607, 608, 610) for the purpose of ascertaining whether the defendant can legally hold the two offices, of a member of the Board of county commissioners and member of the Board of Education in the same county, at one and the same time. The Board of Education is now authorized and regulated by the Act, 1897, Chapter 108, and the 6th Section requires the county commissioners, with the clerk of the court and the Register of Deeds, "to elect three men of their county, of good business qualifications and known to be in favor of public education," who shall constitute a Board of Education.

In obedience to that Section, and in order to observe and perpetuate the "fitness of things," the defendant and his two associates proceeded to elect themselves as members of the Board of Education, and the defendant accepted and entered upon the discharge of the duties thereof.

One ground of defence is that the Board of Education is not an office. This was not seriously urged by the defendant's counsel in this Court. An office is defined by good authority as involving a delegation to the indi-

vidual of some of the sovereign functions of government, to be exercised by him for the benefit of the public, by which it is distinguished from employment or contract.    Mecham on Public Offices, Section 1, 4; *U. S.* v. *Martwell*, 6 Wallace, 385, 393; *Eliason* v. *Coleman*, 86 N. C., 235.    "A public office is an agency for the State."    *Clark* v. *Stanley*, 66 N. C., 59.    We need not further define an office, as the mere reading of the several Sections of chapter 108, of the Act of 1897, makes it too plain that the county Board of Education is a public office.

At common law there was no limit on the right of a citizen to hold several offices, except the incompatibility of the duties of the several offices, and much learning was invoked in England and in this country on the question of "incompatibility."    We are relieved however, from much labor on that subject by our constitution, Article XIV, Section 7:    "No person, who shall hold any office or place of trust or profit under the United States, or any department thereof, or under this State, or under any other State, or government, shall hold or exercise any other office or place of trust or profit under the authority of this State, or be eligible to a seat in either House of the General Assembly; provided that nothing herein contained shall extend to officers in the militia, Justices of the Peace, Commissioners of Public Charities, or commissioners for special purposes."

This provision is plain and leaves no room for construction, whenever the two places under consideration are found to be public offices.

Another position of the defendant is that his acceptance of the second office does not forfeit or vacate the first office.    That is true in one class of cases, that is,

where the officer holds a Federal office and accepts a State office, and the reason is that the State court has no authority to declare the Federal office vacant. The general rule however, is otherwise in the States. It is the acceptance of the second that vacates the first. Throop on Public Officers, Section 39, 31.

"Where, however, it is the holding of two offices at the same time which is forbidden by the Constitution or the statutes, a statutory incompatibility is created, similar in its effect to that of the common law, and, as in the case of the latter, it is well settled that the acceptance of a second office of the kind prohibited operates *ipso facto* to absolutely vacate the first. His acceptance of the one was an absolute determination of his right to the other." Mechem, *supra*, Section 429, citing numerous State decisions.

"The officer has a right to elect which of the two he will have and retain, but his election must be deemed to be made when he accepts and qualifies for the second. The public has a right to know which is held and which is surrendered. It should not be left to chance or to the uncertain and fluctuating whim of the office holder to determine." *State* v. *Brinkerhoof,* 66 Texas, 45; *Stubbs* v. *Lee,* 64 Me., 195; Mechem, *supra,* Section 426, 429.

*In re* Martin, 1 Winston, 153, appendix, was considered by this Court at the request of the Governor, with the aid of an excellent brief filed by Mr. Moore. The facts were that Martin was Adjutant General of North Carolina and accepted the office of Brigadier General in the Army of the Confederate States: Held, that the office of Adjutant General was vacant. This ruling was approved in *McNeill* v. *Somers,* 96 N. C., 467.

The right of election must be admitted in all such

122—32

cases.   If the acceptance in this case and entry did not vacate the first, what did it do?   It is difficult to understand how the defendant could accept the second and hold the first in the same breath, and thereby do what is expressly forbidden by the Constitution.   Reason as well as public policy forbids it.   The exceptions in Throop, *supra,* Section 32, do not include the defendant's case, because they relate to appointments made in violation of a statute and were therefore void; whereas the defendant's election was regular and valid, and was ratified by his acceptance.

His Honor's conclusion was erroneous and his judgment must be reversed.   The question in this State does not turn upon the incompatibility of the duties of the two offices alone, as it did at common law, but upon the plain and positive language of the Constitution.

Reversed.

Let final judgment be entered here.   *Caldwell* v. *Wilson*, 121 N. C., 425, at pages 473, 474.