STATE ex rel. FLYNN, Respondent, *v.* ELLIS, Appellant.

(No. 8,033.)

(Submitted January 19, 1940.   Decided January 30, 1940.)

[98 Pac. (2d) 879.]

Mr. *Jess L. Angstman,* for Appellant, submitted a brief, and argued the cause orally.

*Mr. George E. Hurd,* for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE ARNOLD delivered the opinion of the court.

The relatrix, Alberta R. Flynn, respondent herein, and the appellant, Ruby S. Ellis, were rival candidates on the same party ticket for nomination to the office of county superintendent of schools at the primary election held in Blaine county in July, 1938.. The appellant was nominated and became a candidate in the election held in November, 1938, whereupon she received the highest number of votes, was duly issued a certificate of election, and qualified by filing her oath of office and bond within the time required by law.

The respondent had been the incumbent in the above-mentioned office for the two years previous to January 3, 1939, the date upon which the appellant entered upon the discharge of her official duties. On the desk in the office she found a note from respondent wishing her success and turning the key of the office over to her. Thereupon the respondent accepted a teaching position in the public schools of Chinook.

On or about February 23, 1939, the respondent filed a proceeding in quo warranto against the appellant, seeking to oust her from office, alleging that she did not possess the requisite qualifications, in that she did not hold a state certificate to teach, as required by section 950.1, Revised Codes. The matter was tried before the court, and among other findings it found that the appellant neither had such required certificate at the time of the primary election, at the time of the general election, nor at the time she entered upon the discharge of her duties, but that she had obtained such certificate on June 8, 1939. Judgment was entered upon the findings, ousting the appellant from office, which judgment declared that the respondent was entitled to the office, inasmuch as the appellant was at all times ineligible to hold the office. The respondent since July 27, 1939, has discharged the duties of the office.

It is the contention of appellant that the respondent abandoned the office by her acts in turning over the key, quitting the office and accepting employment as a public school teacher. Appellant does not contend that she herself is entitled to the office. The respondent, on the other hand, contends that no vacancy existed in the office, as the election was void and no qualified person was elected, and, therefore, that she as a holdover is entitled to the office.

That the acts of respondent constituted abandonment is well settled. In *Rainwater* v. *State ex rel. Strickland*, 237 Ala. 482, 187 So. 484, at page 487, 121 A. L. R. 981, at page 986, we find the following language: " 'Abandonment is a species of resignation, but differs from resignation in that resignation is a formal relinquishment, while abandonment is a

voluntary relinquishment through nonuser. Although the intention may be inferred, an office cannot be abandoned without an intention by the officer to relinquish it, and such a relinquishment is not produced merely by a temporary nonuser or neglect of duty. While, in order to constitute an abandonment of an office, it must be total, and under such circumstances as clearly to indicate an absolute relinquishment, the determination of the question whether an officer has abandoned an office is dependent upon his overt acts rather than upon his declared intention, and the law will infer a relinquishment where the conduct of the officer indicates that he has completely abandoned the duties of the office.' (46 C. J. 980, sec. 137.)

'' 'The abandonment of an office may be indicated by the action of the incumbent in voluntarily surrendering it to another under a mistaken belief that the latter has been elected as his rightful successor.' (22 R. C. L. 560, sec. 264; *Attorney General ex rel. Moreland* v. *Maybury,* 141 Mich. 31, 104 N. W. 324, 113 Am. St. Rep. 512, and note, p. 518.)

''And if the incumbent, after competing with an opponent as a candidate in an election, is defeated, and by official action recognizes the election of his opponent and surrenders the office to him, he, as a matter of law, abandons the office and is estopped to invoke the court's jurisdiction to inquire into the validity of such election, either to oust his opponent or have himself reinstated in the office. (*Reg.* v. *Greene,* 2 Q. B. 460, 6 Juris (1842) 777.)'' (See, also, *State ex rel. Klick* v. *Wittmer,* 50 Mont. 22, 144 Pac. 648.)

The respondent contends that had she known that the appellant did not possess the requisite qualifications she would not have abandoned the office to her. We believe this avails the respondent nothing as a justification. The provisions of the law for hold-overs are for the benefit of the office and not the officeholder. We observe, however, that although the respondent was defeated in the July primary election and was not a candidate in the November election, she made no serious effort to discover the facts of appellant's lack of qualifications until long after the appellant had commenced her term of office.

Even were we to hold that respondent's acts did not constitute abandonment, it appears that her successor was elected and qualified within the meaning of the constitutional provision which would prevent a holding over. A certificate of election was issued to her and she filed her official bond and oath within the time required by law. To "qualify" means to file an official bond and oath.

The law under which the respondent was elected, section 5 of Article XVI, Montana Constitution, provides that she shall hold office for two years and until her successor is elected and qualified. Section 10 of Article IX, Montana Constitution, reads as follows: "All persons possessing the qualifications for suffrage prescribed by section 2 of this Article as amended and such other qualifications as the legislative assembly may by law prescribe, shall be eligible to *hold* the office of county superintendent of schools or any other school district office."

Section 950.1, Revised Codes, recites that, "No person shall be *eligible to the office* of county superintendent of schools in any county of Montana, who, in addition to the qualifications required by the constitution of the state of Montana, is not the holder of a state certificate offered by the state of Montana, granted by endorsement upon graduation from a standard normal school, or college, or university; or who is not the holder of a certificate offered by the state of Montana, designated as a state certificate granted by examination in accordance with the rules and regulations as prescribed by the state board of educational examiners; and who has not had at least three years successful experience as a teacher, principal or superintendent of public schools. The above qualifications shall not prohibit the re-election of present incumbents."

Section 410, Revised Codes, provides: "No person is capable of holding a civil office in this state, who at the *time of his election* or appointment is not of the age of twenty-one years and a citizen of this state." Thus the qualifications which must, under the statute, be present at the *time of election,* are limited to age and residence, so far as the particular office in question is concerned.

That all legal qualifications for holding public office are not in every instance required to be present at the time of election, is seen by reading provisions in the state and federal Constitutions relating to senators, representatives, judges, etc.; e. g., section 3, Article I, United States Constitution: "No Person shall *be a Senator* who shall not have attained to the Age of thirty Years, and been nine Years a Citizen of the United States, and who shall not, *when elected,* be an Inhabitant of that State for which he shall be chosen."

In 22 Ruling Case Law, section 43, page 403, we find this language: "The courts do not agree as to the time at which the eligibility or qualification of a person for public office must be determined. The question has arisen most frequently under statutory or constitutional provisions using the words 'eligible' in connection with certain qualifications or disqualifications for public office. One line of authorities holds that the time of election is the proper time to test whether a person is qualified or eligible, and that it is immaterial that a person then disqualified removes the disqualification before actually entering on the duties of the office. \* \* \* But the weight of authority appears to be that where the word 'eligibility' is used in connection with an office, and there are no explanatory words indicating that such word is used with reference to the time of election, it has reference to the qualification to hold the office, rather than the qualification to be elected to the office. Hence a disqualification existing at the time of election may be removed before induction into office, or before the term of office to which such person is elected begins."

Again, at page 400 of the same volume of Ruling Case Law, we find the following language: "All persons are normally eligible and qualified for office unless they are excluded by some constitutional or legal disqualification. Hence after one has been appointed to office there is a presumption that he possesses the prescribed qualifications and that the person appointing him properly looked into and determined the question of his eligibility."

Here the appellant, of course, did not possess all of the qualifications until June 8, 1939. She was not ousted until July, ▮ after having served as a *de facto* officer for nearly six months. That each of the parties involved in this proceeding was a *de facto* officer while discharging the duties of the office of county superintendent is apparent under the rule laid down in *State ex rel. Buckner* v. *Mayor of Butte*, 41 Mont. 377, 109 Pac. 710, 712. Therein the following language was adopted by this court: "The public has an interest in the continuous and unbroken discharge of official duty, and the necessities thereof, and cannot wait to try the title of conflicting claimants to an office. For this reason it has come to be held, so often as to be now settled, that the official acts of the incumbent of an office, with whom alone the public can, under the circumstances, transact business, shall be regarded as legal. The affairs of society could not be carried on in any other way than by treating as valid the official acts of persons *de facto* in office."

For the reasons given, the judgment of the district court is affirmed wherein it ousts appellant and awards costs to respondent, but is reversed wherein it adjudges and decrees respondent entitled to hold the office of county superintendent of schools.

The district court is directed under the provisions of section 512, Revised Codes, to give notice to the board of county commissioners of Blaine county that a vacancy exists in the office of county superintendent of schools. Each party shall pay her own costs in this appeal.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, ANGSTMAN and ERICKSON concur.