FILED

September 10 2013

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 12-0505

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 258

TAMMY ZUNSKI,

       Plaintiff and Appellant,

  v.

THE FRENCHTOWN RURAL FIRE
DEPARTMENT BOARD OF TRUSTEES,

       Defendant and Appellee.


APPEAL FROM:    District Court of the Fourth Judicial District,
                  In and For the County of Missoula, Cause No. DV 11-1092
                  Honorable Edward P. McLean, Presiding Judge


COUNSEL OF RECORD:

       For Appellant:

           Daniel J. Flaherty, Attorney at Law, Great Falls, Montana

       For Appellee:

           D. James McCubbin, Deputy County Attorney; Fred Van Valkenburg,
           Missoula County Attorney, Missoula, Montana


                         Submitted on Briefs:  June 26, 2013

                                 Decided:  September 10, 2013


Filed:

                _____
                            Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Appellant Tammy Zunski (Zunski) appeals the decision of the Fourth Judicial District Court, Missoula County, that granted summary judgment to the Frenchtown Rural Fire Department Board of Trustees (Board) against Zunski's right to know and right to participate claims. We affirm.

¶2     We address the following issues on appeal:

¶3     *Whether the District Court correctly determined that the Board's actions at the August 8, 2011, meeting rescinded the actions taken at the improper July 20, 2011, meeting and thereby defeated Zunksi's open meeting and public participation claims?*

¶4     *Whether the District Court correctly determined that the Board had responded to Zunski's document request in a reasonably timely manner?*

**FACTS**

¶5     The Board is a subdivision of the State of Montana. The Board's duties include providing personnel for the Frenchtown Rural Fire District (FRFD). The FRFD chief resigned amidst controversy in February 2009. The Board initiated a search to hire a new FRFD fire chief. The Board later considered whether to hire an interim fire chief after a permanent chief applicant declined an offer.

¶6     Mitchell Hicks (Hicks), a trustee on the Board, expressed interest in serving as interim FRFD chief. The Board requested on June 30, 2011, an opinion from a private law firm to address "whether a [t]rustee of the Frenchtown Rural Fire District [sic] be hired as an interim [f]ire [c]hief while the search for a full time [c]hief continues." The Board received

2

the opinion letter on July 1, 2011. The opinion letter concluded that "there is no statute, by-law or policy that prohibits a [t]rustee from acting as a [t]emporary [f]ire [c]hief." The opinion letter further advised that "as long as the [t]rustee is hired as a [t]emporary [e]mployee, exception to policies regarding selection of the employees based on merit and qualifications need not be met."

¶7 The Board held a special session on July 20, 2011. At the special session, the Board voted to enter into a closed door "executive session." The Board voted to create an interim fire chief position during the executive session. The Board then voted during the executive session to hire Hicks for the interim position and to set Hicks's compensation at $5,000 per month. Hicks became interim fire chief on August 1, 2011.

¶8 Zunski challenged the propriety of the July 20, 2011, meeting and the actions taken at the meeting. Zunski filed a request for documents with the Board on August 3, 2011. Zunksi also requested that the Board allow public comment before it hired an interim fire chief. The Board accommodated Zunski's request to revisit its decision.

¶9 The Board held a properly noticed meeting on August 8, 2011, with a pre-published agenda that included "Hire Interim Chief – Action." The Board accepted public comment regarding the interim fire chief position. Zunski and others commented during the meeting. The Board again voted to hire Hicks as the interim fire chief. Hicks served as the interim fire chief from August 1, 2011, until March 31, 2012. The Board hired a permanent fire chief who began serving on March 26, 2012.

¶10 The Board had not complied fully with Zunski's document request by the August 8,

3

2011, meeting. Zunski had made her formal request on August 3, 2011. The Board had begun to compile Zunski's requested information on August 5, 2011. The Board partially had complied with Zunski's document request by the August 8, 2011, meeting. The Board made another partial production on August 16, 2011.

¶11 Zunski filed a complaint on August 19, 2011, in which she alleged that the Board's actions at the July 20, 2011, meeting contravened Montana's open meeting law and her rights to know and to participate. Zunski further alleged that the August 8, 2011, meeting failed to comply with her rights to know and to participate. Zunski sought the production of both the documents that she had formally requested on August 3, 2011, and additional documents. Zunski asked the court to set aside Hicks's hiring. Zunski also sought an award for attorney fees and costs.

¶12 The parties filed cross motions for summary judgment. The District Court determined that the Board's August 8, 2011, meeting complied with the open meeting and right to participate laws. The proceedings and decision made at the August 8, 2011, meeting "served to rescind the prior decisions made on July 20, 2011." The Board had begun to compile the requested information for Zunski on August 5, 2011, and it had delivered partial responses on August 8, 2011, and August 16, 2011. The court therefore concluded that the filing of Zunski's complaint on August 19, 2011, "did not affect the timing or substance" of the Board's responses. Zunski appeals.

**STANDARD OF REVIEW**

¶13 We review de novo a district court's grant or denial of a motion for summary

4

judgment. *Sayers v. Choteau Co.*, 2013 MT 45, ¶ 21, 369 Mont. 98, 297 P.3d 312. We apply the same standards the district court uses under M. R. Civ. P. 56(c). *Sayers*, ¶ 21.

## DISCUSSION

¶14 *Whether the District Court correctly determined that the Board's actions at the August 8, 2011, meeting rescinded the actions taken at the improper July 20, 2011, meeting and thereby defeated Zunksi's open meeting and public participation claims?*

¶15 Montana's open meeting and public participation laws apply to the Board and its activities . Mont. Const. art. II, § 8; Section 2-3-203, MCA. Nothing in § 2-3-203, MCA, exempts a public body's committee and subcommittee meetings from Montana's open meeting laws.

¶16 A district court may void a final decision made in a meeting that violates Montana's open meeting law. *Goyen v. City of Troy*, 276 Mont. 213, 219-20, 915 P.2d 824, 828-29 (1996); Section 2-3-213, MCA. The governing body can remedy the illegality of the meeting without judicial involvement by making a new decision that is not based on anything from the illegal meeting. *Goyen*, 276 Mont. at 219-20, 915 P.2d at 828-29. This remedy requires at a minimum the re-adoption of the challenged action in a manner that comports with the law. A successful remedy generally cures the previous violation and thereby renders moot potential controversies about the illegality. *Havre Daily News, LLC v. City of Havre*, 2006 MT 215, ¶¶ 30-31, 333 Mont. 331, 142 P.3d 864.

¶17 The District Court determined that the Board's August 8, 2011, meeting complied with the open meeting and right to participate laws. The actions that the Board took at its

5

August 8, 2011, meeting correspondingly complied with the opening meeting and right to participate laws. *Havre Daily News*, ¶ 30. The August 8, 2011, meeting's compliance with the open meeting and public participation laws remedied any earlier violations of those laws. *Havre Daily News*, ¶ 30. The Board's remedy rendered moot any actual controversies about the actions taken at the July 20, 2011, meeting. *Bryan v. Yellowstone Co. Elementary Sch. Dist. No. 2*, 2002 MT 264, 312 Mont. 257, 60 P.3d 381. The Board neither denied Zunski access to any "hard data that was critical to the decision," nor did it keep the public in the dark about an imminent decision. *Allen v. Lakeside Neighborhood Planning Committee*, 2013 MT 237, ¶ 24, __ Mont. __, __ P.3d __.

¶18     Zunski nevertheless argues that the Court should analyze the merits of the Board's decision to hire Hicks at the July 20, 2011, meeting. Zunski contends that the Board's illegal action "is capable of repetition" despite the fact that the Board evaded review in this instance. Zunski argues, in the alternative, that the Board's "voluntary cessation" of its illegal decision to hire Hicks at the July 20, 2011, meeting should not prevent judicial scrutiny. The "voluntary cessation" and "capable of repetition yet evading review" doctrines may resuscitate a claim otherwise mooted. *Havre Daily News*, ¶¶ 31-34.

¶19     The voluntary cessation doctrine applies when a defendant's challenged conduct "is of indefinite duration, but is voluntarily terminated by the defendant prior to completion of appellate review." *Havre Daily News*, ¶ 34. The doctrine provides that voluntary cessation of a challenged action will moot a case only when it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Havre Daily News*, ¶ 38.

6

¶20 Zunski suggests that the Board's conduct will recur because the Board contravened controlling legal doctrines. Zunski argues that by hiring Hicks, a board member, to serve as interim fire chief that the Board violated the incompatible offices doctrine. *State ex rel. Klick v.Wittmer*, 50 Mont. 22, 144 P. 648, 649-50 (1914). The doctrine provides that a person cannot hold an office over which the person exercises supervisory control. *Klick*, 50 Mont. at 22, 144 P. at 649. Hicks's employment for FRFD from August 1, 2011, until March 31, 2012, violated the incompatible offices doctrine in that Hicks, as a member of the Board, exercised supervisory control over the interim fire chief. *Klick*, 50 Mont. at 22, 144 P. at 649. Zunski's claim nevertheless remains moot.

¶21 Zunski did not raise the issue of the incompatible offices doctrine until after the Board already had eliminated the interim fire chief position. The Board insists that it would be "doubly speculative to guess" that it would act in the future without considering the incompatible offices doctrine. We agree. We have no reasonable expectation that the Board again would attempt to hire a trustee in violation of the incompatible offices doctrine. We expect the Board will adhere strictly to the doctrine, and to all other laws. We decline to presume the Board's bad faith. The Board has met its burden of persuasion that it will not violate the incompatible offices doctrine again in the future. *Havre Daily News,* ¶ 34.

¶22 The capable of repetition yet evading review exception only applies "where the challenged conduct *invariably* ceases before courts fully can adjudicate the matter." *Havre Daily News*, ¶ 33. A party can avail itself of this exception only when the time between the challenged wrong and the occurrence rendering the case moot "is always so short as to evade

7

review." *Havre Daily News*, ¶ 33. The party that invokes the exception also must establish that "there is a reasonable expectation that the same complaining party will be subject to the same action again." *Havre Daily News,* ¶ 34.

¶23 A party who asserts this exception must establish both that the challenged conduct inherently is of limited duration and that there is a reasonable expectation that "the same complaining party will be subject to the same action again." *Havre Daily News*, ¶ 34. Zunski has failed to establish a reasonable expectation that the Board will again appoint a trustee to an illegal interim position. The "incompatible offices" doctrine would bar the Board from hiring a trustee as an interim fire chief. *Klick*, 50 Mont. at 22, 144 P. at 649. The Board has given no indication that it would not follow the incompatible offices doctrine or other applicable law. Zunski counters with general statements that "the offending conduct will likely be repeated." The absence of more concrete evidence prevents the Court from forming a reasonable expectation that the Board again would hire an employee in violation of the incompatible offices doctrine.

¶24 Zunski lastly argues that the District Court failed to address the legality of Hicks's appointment. Section 2-3-213, MCA, provides that a district court may void any decision made at a noncompliant meeting. The Board's decision to hire Hicks at the July 20, 2011, noncompliant meeting no longer was in effect by the time that Zunski commenced this action on August 19, 2011. The Board's August 8, 2011, meeting's compliance with the open meeting law had abrogated the challenged hiring of Hicks at the July 20, 2011, meeting. The Board already had performed Zunski's requested remedy of re-visiting its decision from the

8

noncompliant July 20, 2011, meeting. *Havre Daily News*, ¶ 30.

¶25 *Whether the District Court correctly determined that the Board had responded to Zunski's document request in a reasonably timely manner?*

¶26 Montana's constitutional right to know gives citizens the right to examine documents of "state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure." Mont. Const. art. II, § 9. The District Court determined that the Board had delivered to Zunski all documents responsive to Zunski's August 3, 2011, right to know request by the time that the parties had filed motions for summary judgment. The District Court further determined that Zunski's lawsuit had not affected the timing or substance of the Board's responses to Zunski's request. The District Court concluded that Zunski "does not dispute that partial responses were made to her requests prior to the filing of the complaint, that FRFD's responses were reasonably timely, and that all document requests described in the [c]omplaint have been responded to in full."

¶27 Zunski filed her right to know request on August 3, 2011. The Board partially fulfilled the request on August 5, 2011. The Board made further partial deliveries on August 5, 2011, and August 16, 2011. The Board also provided documents to Zunski after she commenced this action on August 19, 2011. The District Court determined that Zunski's requests have "been very extensive" and were amended and broadened "numerous times."

¶28 Zunksi argues that material facts exist as to whether the Board produced all requested documents in a reasonable and timely manner. Zunski claims that "[t]he Board did not disclose the Frank Stanley documents, the sub-committee minutes, or the undisclosed

9

meeting prior to the [sic] August 8, 2011." Zunski further argues that the Board withheld and failed to identify documents until Zunski conducted depositions.

¶29 The District Court determined that no dispute existed regarding the delivery of responsive documents to Zunski based on Zunski's own admission. Zunski qualifiedly admitted before the Board had filed its motion for summary judgment that no outstanding requests for public documents remained. Zunski qualified her admission on the basis that the Board "certify that all agendas, emergency sessions, & budgets have been produced." The Board responded, that to the best of its knowledge, "all documents responsive . . . have been delivered to Plaintiff." Zunski's admission removed from dispute any remaining right to know claim that she may have possessed.

¶30 Zunski unsuccessfully attempts on appeal to refute her admission. To substantiate her assertions, Zunski offers only vague directions such as "documents, including committee minutes were not produced until the depositions of Sayler." Upon inspection of the directed documents we cannot locate any basis for Zunski's claims. Zunski fails to inform the Court when and through what means she had requested or obtained these documents. For others, Zunski offers no evidence as to what specifically she had requested. Zunski asks that we assume that the Board provided these documents only through means enabled by this action. The undisputed facts and Zunski's own admission foreclose that assumption.

¶31 We will not fault the District Court for relying on Zunski's admission. *See* M. R. Civ. P. 36(b). Zunski admitted that the Board had provided all documents responsive to her right to know request. The District Court determined that the Board had provided all responses in

a reasonable and timely manner. The District Court properly found that no further controversy existed regarding Zunski's right to know claims. *Havre Daily News*, ¶ 31. We are left with no reasonable expectation that the Board would fail to comply with any future right to know requests made by Zunski. The District Court correctly resolved Zunski's right to know claims. *Sayers*, ¶ 21.

¶32 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ JIM RICE
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON