FILED

February 24 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0562

DA 14-0562

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2015 MT 55

CITIZENS FOR OPEN GOVERNMENT, INC.,

        Petitioner and Appellant,

  v.

CITY OF POLSON,

        Respondent and Appellee.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DV 13-265
Honorable James A. Manley, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            William A. Schreiber, Attorney at Law; Polson, Montana

        For Appellee:

            Tracey Neighbor Johnson; William L. Crowley, Boone, Karlberg, P.C.;
Missoula, Montana

Submitted on Briefs:  January 14, 2015
Decided:  February 24, 2015

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Citizens for Open Government (Citizens) appeals the Twentieth Judicial District Court's grant of summary judgment in favor of the City of Polson (City). We address the following issues on appeal:

> *1. Whether Citizens was denied its right under Montana's open meeting laws to participate in an executive session held by the City Commission.*
>
> *2. Whether the District Court abused its discretion by declining to void the City's decision to present an offer letter to a candidate for city manager.*
>
> *3. Whether the District Court improperly determined facts in a summary judgment proceeding without an evidentiary hearing on the merits of the case.*

¶2 We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 In the spring of 2013, the City began the process of hiring a new city manager. Between April and September 2013, the City Commission held several public meetings during which it discussed the search for a city manager and gave the public opportunities to comment. The Commission narrowed down the applicants for city manager to five finalists.

¶4 In August 2013, the City announced that there would be a community "meet and greet" on September 11, during which the public would have the opportunity to speak to the five finalists and fill out comment cards. The comment cards would be given to the search committee, a body of non-commissioners selected by the Commission at a public meeting in April. The mayor encouraged the public to attend the event. The City also published a press release, providing information about the meet and greet and a link to

the city website containing biographical information for the five finalists. The press release was picked up by several local news sources.

¶5 On September 12, the Commission held a public interview with the candidates. Commissioners asked each candidate several questions, after which the public had an opportunity to comment. On the same day, the search committee and an employee interview panel conducted two interviews that were not open to the public.

¶6 The Commission's September 12 public meeting agenda listed a closed executive session with the description, "PERSONNEL-MEET WITH INTERVIEW PANELS AND DELIBERATE ON SELECTION OF CITY MANAGER." At least three persons associated with Citizens[1] objected to the executive session because they felt it violated Montana open meeting laws. The Commission proceeded with the executive session over Citizens' objections.

¶7 On September 13, the mayor and city manager candidate Mark Shrives signed an offer letter for the position of city manager. At a public meeting on September 16, the Commission voted to authorize the mayor to negotiate and conclude a final bargain with Shrives within the parameters of the offer letter, subject to the Commission's final approval of an employment contract. The mayor stated that all three interview panels had come back with the same top candidates. During public comment, a member of Citizens asked whether the public would have the opportunity to review a contract or offer input on it before finalization. The mayor responded that the contract would be attached to the

---

[1] Citizens describes associated persons as either "members" or "associates," but does not clearly distinguish the two terms. We refer to all persons associated with Citizens as "members."

3

meeting agenda when it was brought to the Commission for a vote. Another member of Citizens indicated displeasure that the September 12 executive session was closed to the public.

¶8 At a public meeting on September 20, the Commission unanimously voted to approve the city manager employment contract negotiated by the mayor. At the beginning of the meeting, the commissioners provided copies of a contract signed by Shrives to attending members of the public. The mayor also explained changes to a draft that previously was distributed and posted on the city website. Members of Citizens inquired about the changes and asked for clarifications, after which the Commission voted to approve the contract.

¶9 Citizens brought suit on October 15, 2013, contending that the September 12 executive session violated Citizens' right to participate under the Montana Constitution and Montana statutory law. The parties filed cross-motions for summary judgment. By order entered July 31, 2014, the District Court rejected the City's argument that Citizens lacked standing to file its complaint. The court denied Citizens' cross-motion for summary judgment and ruled in favor of the City on the merits of Citizens' claims, declining to void the Commission's decision to present Shrives with an offer letter. Citizens appeals.

**STANDARDS OF REVIEW**

¶10    We review a district court's grant of summary judgment de novo. *Bailey v. St. Farm Mut. Auto. Ins. Co.*, 2013 MT 119, ¶ 18, 370 Mont. 73, 300 P.3d 1149. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c)(3); *Smith v. Burlington N. & Santa Fe Ry. Co.*, 2008 MT 225, ¶ 10, 344 Mont. 278, 187 P.3d 639. The interpretation of a statute is a question of law that we review for correctness. *City of Missoula v. Iosefo*, 2014 MT 209, ¶ 8, 376 Mont. 161, 330 P.3d 1180.

¶11    We review for abuse of discretion a district court's determination whether to void a decision made in violation of Montana's open meeting laws. *Motta v. Philipsburg Sch. Bd. of Trs.*, 2004 MT 256, ¶ 21, 323 Mont. 72, 98 P.3d 673; *Common Cause v. Statutory Comm'n to Nominate Candidates for Comm'r of Political Practices*, 263 Mont. 324, 334, 868 P.2d 604, 610 (1994). A court abuses its discretion if it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *Chase v. Bearpaw Ranch Ass'n*, 2006 MT 67, ¶ 15, 331 Mont. 421, 133 P.3d 190.

**DISCUSSION**

¶12    Citizens challenges the Commission's closure of its September 12 executive session, during which the Commission discussed the five finalists for city manager. The District Court determined, without deciding, that, even if the executive session violated open meeting laws, any violation did not justify voiding the contract. The court

5

emphasized that the decision to hire Shrives was subject to final approval by the Commission, and that the Commission held two subsequent public meetings during which it voted to authorize the mayor to negotiate with Shrives and voted to approve the final contract. The court noted that public comments were taken during both of those meetings, and that the public had "ample opportunity" to participate leading up to the final hiring decision. Ultimately, the court concluded that "[v]oiding the decision to offer a contract to Shrives would, at this point, serve no substantial public purpose" and declined to exercise its discretion to void the hiring decision.

¶13 Citizens argues that the District Court abused its discretion by not voiding the Commission's decision to hire a new city manager after the public was denied the right to observe and participate in the Commission's deliberations and decision. Citizens also argues that the District Court erred in determining facts without an evidentiary hearing and in basing its decision in favor of the City on those facts.

¶14 *1. Whether the public had the right to participate in the Commission's September 12 executive session under Montana's open meeting laws.*

¶15 A government agency must afford citizens a "reasonable opportunity" to participate before the agency makes a final decision. Mont. Const. art. II, § 8. The public has the right to observe deliberations of public bodies "except in cases in which the demands of individual privacy clearly exceed the merits of public disclosure." Mont. Const. art. II, § 9. Montana's open meeting statutes, codified at §§ 2-3-201 through -221, MCA, implement these rights. *Common Cause*, 263 Mont. at 329, 868 P.2d at 607.

6

¶16 The law requires all meetings of public or governmental bodies to be open to the public. Section 2-3-203(1), MCA. A meeting is "the convening of a quorum of the constituent membership of a public agency or association . . . , to hear, discuss, or act upon a matter over which the agency has supervision, control, jurisdiction, or advisory power." Section 2-3-202, MCA. The statute provides exceptions for discussions relating to a matter of individual privacy, discussions of litigation strategy, and judicial deliberations. Sections 2-3-203(3) through (5), MCA. Unless the individual about whom the discussion pertains waives his or her privacy right, the meeting may be closed "if and only if the presiding officer determines that the demands of individual privacy clearly exceed the merits of public disclosure." Section 2-3-203(3), MCA.

¶17 There is no question that the above statutes apply to the Commission and to its September 12 executive session. *See Bd. of Trs. v. Bd. of Cnty. Commr's*, 186 Mont. 148, 155, 606 P.2d 1069, 1072 (1980) (applying Montana's open meeting laws to a closed meeting of county commissioners). Although the city manager candidates acknowledged that they would be interviewed in an open public session, they did not waive their privacy interest for any other purpose. Neither party submitted evidence that the presiding officer determined "that the demands of individual privacy clearly exceed the merits of public disclosure." The Commission should have made that determination before closing the executive session to the public.

7

¶18    *2. Whether the District Court abused its discretion by declining to void the Commission's decision to present an offer letter to Shrives.*

¶19    A district court has discretion to void a decision made in violation of Montana open meeting laws. Section 2-3-213, MCA ("Any decision made in violation of 2-3-203 *may* be declared void by a district court having jurisdiction.") (emphasis added); *Motta*, ¶ 21.

¶20    Although "voiding a decision by a public entity for failure to comply with open meeting laws may sometimes be an appropriate remedy," *Allen v. Lakeside Neighborhood Planning Comm.*, 2013 MT 237, ¶ 24, 371 Mont. 310, 308 P.3d 956 (distinguishing *Bryan v. Yellowstone Cnty. Elementary Sch. Dist. No. 2*, 2002 MT 264, 312 Mont. 257, 60 P.3d 381), we have held that a district court did not abuse its discretion by declining to void action taken at a closed meeting when the governing body allowed subsequent opportunities for public comment on the decision, *Allen*, ¶ 30; *Zunski v. Frenchtown Rural Fire Dep't Bd. of Trs.*, 2013 MT 258, ¶ 17, 371 Mont. 552, 309 P.3d 21, or when the decision made during the executive session was subject to further review before becoming final, *Allen*, ¶ 30; *Common Cause*, 263 Mont. at 333, 868 P.2d at 610. The District Court, citing these authorities, concluded that both circumstances were present here.

¶21    In *Allen*, we upheld a district court's discretionary determination that voiding a neighborhood plan, adopted by a planning committee, was not an appropriate remedy for the committee's failure to hold public meetings for several months at the beginning of its planning process. *Allen*, ¶ 32. In reaching our decision, we reasoned that the public had

8

ample opportunity to participate in subsequent meetings, after the committee realized it was subject to Montana's open meeting laws and before the final plan was adopted. *Allen*, ¶ 25.

¶22 Similarly, in *Zunski*, we held that the Frenchtown Rural Fire Department Board of Trustees' decision to create an interim fire chief position and hire a specific person for that position, made during a closed meeting, was cured when the Board readopted the challenged action in a meeting that "complied with the open meeting and right to participate laws." *Zunski*, ¶ 17. We therefore concluded that the district court did not abuse its discretion by refusing to void the Board's decision. *Zunski*, ¶ 31.

¶23 The District Court in this case found that, during the September 12 executive session, the Commission decided to present an offer letter to Shrives. Before any contract was finalized, however, the public had the opportunity to comment on the Commission's decision on two separate occasions—the September 16 meeting during which the Commission authorized the mayor to negotiate and conclude a final bargain with Shrives, and the September 20 meeting during which the public was invited to read and comment on the contract signed by Shrives.

¶24 Furthermore, the offer letter presented to Shrives explicitly stated that any contract he signed would be subject to final approval by the Commission. That approval came at the September 20 open meeting, following an opportunity for public comment. We adhere to our reasoning in *Allen* and *Common Cause*—in both cases, a district court did

9

not abuse its discretion by declining to void a decision that violated Montana's open meeting laws but was subject to final review and consideration.

¶25 We emphasized in *Allen* that the public had opportunities to comment after the committee had met privately to discuss initial drafts of a neighborhood plan. *Allen*, ¶ 25. We also noted that the neighborhood planning board's recommendation to adopt the plan was subject to review by the county commissioners, who were not bound to accept the recommendation. *Allen*, ¶ 28. Because the commissioners could have rejected the board's recommendation, we agreed with the district court that voiding the commissioners' adoption of the neighborhood plan was not an appropriate remedy. *Allen*, ¶ 30. We cited *Common Cause*, in which we held that a district court did not abuse its discretion by declining to void a legislative committee's decision to compile a list of candidates for the position of Commissioner of Political Practices, despite the committee's violation of Montana's open meeting laws. *Allen*, ¶¶ 28-29 (citing *Common Cause*, 263 Mont. at 330-33, 868 P.2d at 607-09). We reached our conclusion in *Common Cause* based on the fact that the committee's list of candidates was subject to review by the governor, who was not bound by the list in making his final decision. *Common Cause*, 263 Mont. at 332, 868 P.2d at 609.

¶26 The Commission did not hire Shrives as the new city manager until it adopted his employment contract following two additional open, public meetings after the September 12 executive session. At the time of the District Court's ruling, Shrives had been the city manager for nearly a year. The offer letter indicates that the contract is for a two-year

term, which expires in September 2015. Presumably, there will be a new opportunity for public input at that time. We conclude that the District Court did not abuse its discretion by declining to void the Commission's decision to present an offer letter for the position of city manager to Shrives, even though the Commission did not make a privacy determination before closing its executive session.

¶27   *3. Whether the District Court improperly determined facts in a summary judgment proceeding without an evidentiary hearing on the merits of the case.*

¶28   In Montana, "[t]he right to a hearing is waived unless a party requests a hearing within 14 days after the time for filing a reply brief has expired." M. R. Civ. P. 56(c)(2). Citizens contends that the District Court impermissibly relied on facts without holding an evidentiary hearing and based its finding that the public had ample opportunities to participate on incorrect facts. However, Citizens waived any right to an evidentiary hearing by not requesting one under Rule 56(c)(2). Moreover, the record reveals no genuine dispute of material fact on this point. Minutes from public Commission meetings indicate that the public did in fact have two opportunities to comment on the decision to hire Shrives as city manager before the Commission voted unanimously to approve the employment contract: at the end of the September 16 public meeting and before the Commission's vote on September 20. Whether members of the public actually used those opportunities to discuss the candidates does not call into question the District Court's ruling.

**CONCLUSION**

¶29   The City of Polson took considerable steps to conduct its hiring process in an open and transparent manner. The Commission did not comply with the open meeting laws, however, when it closed its executive session without first determining that the demands of individual privacy clearly exceeded the merits of public disclosure. Because the Commission did not finalize its hiring decision until it held two additional open, public meetings, we conclude that the District Court did not abuse its discretion by declining to void the Commission's decision to present an offer letter for the position of city manager to Shrives.

¶30   We affirm the District Court's decision and order.


/S/ BETH BAKER


We concur:

/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JIM RICE